Caryn McCUE, Plaintiff,

v.

STATE OF KANSAS, DEPARTMENT OF HUMAN RESOURCES, Joe Dick, Joseph Ybarra, Bill Medlock, and Bob Molander, Defendants.

Civil Action No. 95–CV–2116–DES.

United States District Court,
D. Kansas.

Aug. 8, 1996.

720

Timothy W. Monsees, Monsees, Miller & Defeo, Kansas City, MO, for plaintiff.

John M. Cassidy, Office of Attorney General, Topeka, KS, Michael E. Francis, Deanne W. Hay, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, KS, for State of Kansas, Department of Human Resources, Joe Dick, Joseph Ybarra, Bill Medlock, and Bob Molander.

### MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter is before the court on the defendants' Motion for Summary Judgment (Doc. 63).

## I. BACKGROUND

Caryn McCue is a former employee of the Kansas Department of Human Resources ("KDHR"). The plaintiff alleges that her supervisor, Joseph Ybarra, sexually harassed her from 1986 through October 3, 1990. The plaintiff filed an internal discrimination complaint with KDHR on October 4, 1990. KDHR subsequently removed Mr. Ybarra from direct supervision of the plaintiff. On February 2, 1991, the plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Kansas Commission on Civil Rights ("KCCR"). The charge alleged that Mr. Ybarra had retaliated against the plaintiff for filing an internal complaint. The plaintiff amended her charge on April 10, 1991, to include an allegation of sexual harassment. The EEOC issued Ms. McCue a "right-to-sue" letter on or about January 11, 1993, which advised the plaintiff that she had ninety days in which to file suit on her claim.

KDHR discharged the plaintiff on August 19, 1993. On September 15, 1993, Ms. McCue filed a second charge of discrimination with the EEOC and the Kansas Commission on Human Rights, alleging that she had been fired in retaliation for filing her first discrimination charge.

The plaintiff filed the instant suit on March 9, 1995. She states claims for sexual harassment and retaliation pursuant to 42 U.S.C. § 2000e *et seq.* and the Kansas Act Against Discrimination ("KAAD"), Kan.Stat.Ann. § 44–1001 *et seq.*, as well as claims pursuant to 42 U.S.C. § 1983.

## II. SUMMARY JUDGMENT STANDARDS

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1985). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. at 2510. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might properly affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir.1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1985). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. at 2552–53.

Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1985). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553–54 (interpreting Fed.R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. at 2552. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. at 2552–53.

## III. DISCUSSION

### A. Title VII Harassment Claim

The defendants argue that Ms. McCue's failure to file suit within ninety days of receiving her "right-to-sue" letter bars her sexual harassment claim. 42 U.S.C. § 2000e–5(f)(1) provides that:

> [i]f a charge filed with the [EEOC] ... is dismissed by the [EEOC], or if within one hundred and eighty days from the filing of such charge ... the [EEOC] has not filed a civil action under this section ..., or the [EEOC] has not entered into a conciliation agreement to which the person aggrieved is a party, the [EEOC] ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved....

The plaintiff received a determination letter from the EEOC on or about January 11, 1993. The letter stated that "the charging party may only pursue this matter by filing suit against the respondent(s) named in the charge within 90 days of receipt of this letter. Otherwise; the Charging Party's right to sue will be lost." The plaintiff did not file her complaint in this action until March 9, 1995.

The plaintiff responds that her claim is not time-barred, in that she has demonstrated a course of continuing acts of harassment and retaliation. Ms. McCue cites *Martin v. Nannie & the Newborns, Inc.*, 3 F.3d 1410 (10th Cir.1993), in support of her argument. The "continuing course of conduct" doctrine described in *Martin*, however, applies to the requirement that a plaintiff file her charge with the EEOC within 180 days after an alleged unlawful employment practice, or within 300 days in those states that have statutorily prohibited sexual discrimination. *Id.* at 1414–15 & n. 4 (citing 42

U.S.C. § 2000e–5(e)(1)). Under the doctrine, a claim of discrimination may include incidents which occurred outside the statutory time limitation, so long as at least one violation occurred within the 180/300–day period prior to filing one's EEOC charge. *Id.* at 1415. The continuing violation theory does not eliminate the requirement that a plaintiff file a judicial action within ninety days of receipt of notice of her right to sue. *Brown v. Hartshorne Pub. Sch. Dist. No. 1,* 926 F.2d 959, 961 (10th Cir.1991).

Ms. McCue contends, in the alternative, that the ninety-day period for filing suit should not operate to bar her harassment claim, because her employer pressured and deceived her into not filing suit in a timely manner. The plaintiff refers the court to her own affidavit and deposition, in which she describes a conversation she had with defendants Bill Medlock and Bob Molander. The plaintiff testified as follows:

> Both men agreed that it would be to the best of my interest not to pursue that, to—their words were let bygones be bygones and let it lay, go on with your life, go on with your job and you would probably be better off if I did not sue, to let it go, and I would have a better chance of being promoted in the future and on and on if I let it go.

Mr. Molander testified that he did not remember this specific conversation, but that he felt confident that he would not have advised Ms. McCue not to follow up on her complaint. Mr. Medlock recalled having a conversation with Ms. McCue within her "right to sue" window. Mr. Medlock admitted that when Ms. McCue informed him that she was not going to sue that he felt relief, which he may have expressed verbally.

 The ninety-day "right to sue" period under 42 U.S.C. § 2000e–5(f)(1) is a nonjurisdictional limitation subject to equitable tolling. *Scheerer v. Rose State College,* 950 F.2d 661, 665 (10th Cir.1991), *cert. denied,* 505 U.S. 1205, 112 S.Ct. 2995, 120 L.Ed.2d 872 (1992). A Title VII time limit will be tolled, however, only if there has been active deception of the claimant regarding procedural requirements. *Jarrett v. US Sprint Communications Co.,* 22 F.3d 256,

260 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 368, 130 L.Ed.2d 320 (1994). Courts have refused to toll the limitations period where failure to file a complaint is not due to a false representation by a court, agency, or putative defendant. *Johnson v. United States Postal Serv.,* 861 F.2d 1475, 1481 (10th Cir.1988), *cert. denied,* 493 U.S. 811, 110 S.Ct. 54, 107 L.Ed.2d 23 (1989).

We find that there was no active deception of the plaintiff with regard to the filing of her Title VII action. First, the EEOC informed Ms. McCue in unequivocal language that she had to file suit within ninety days of receipt of its January 11, 1993, letter, or lose her right to sue. Nor do we believe that the defendants actively deceived the plaintiff as to her rights. Even if Mr. Medlock and Mr. Molander made the comments to which the plaintiff testified, the court does not find that such suggestions or advice rise to the level of active deception. The plaintiff does not claim that she was deceived as to the procedural requirements for suing, but rather admits that she "elected to let the 90 days for the filing of a civil lawsuit lapse."

 Even if the defendants' alleged comments constituted active deception, the limitations period would not be tolled so as to save the plaintiff's harassment claims. "Equitable tolling is appropriate when a plaintiff, through no fault of her own, has been injured by fraud *and remains in ignorance of it.*" *Allen v. Bolger,* 597 F.Supp. 482, 484 (D.Kan. 1984) (emphasis added) (citing *Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946); *Wilkerson v. Siegfried Ins. Agency, Inc.,* 683 F.2d 344, 348 (10th Cir.1982)). In *Martinez v. Orr,* 738 F.2d 1107 (10th Cir.1984), the Tenth Circuit applied the principles of equitable tolling to preserve the plaintiff's claim where, once the condition necessitating tolling had been removed, the plaintiff filed suit within the statutory period. *Id.* at 1111–12.

In the case at bar, the plaintiff claims that her employer misled her as to her chances for a promotion, thereby prompting her decision not to sue. Any misrepresentation regarding the plaintiff's future with the defendants, however, necessarily ceased upon the

plaintiff's discharge in August 1993. Thus, even if the defendants' statements to the plaintiff tolled the § 2000e–5(f)(1) limitation, the ninety-day period for filing suit would have expired in November 1993, some sixteen months before Ms. McCue filed her complaint. The plaintiff's Title VII claim for harassment is therefore barred by § 2000e–5(f)(1)'s ninety-day limitation period.

### B. *Title VII Retaliation Claim*

Ms. McCue also maintains that the defendants retaliated against her for filing charges of discrimination with the EEOC and KCCR. The plaintiff claims that the defendants discharged her in violation of 42 U.S.C. § 2000e–3(a).

 42 U.S.C. § 2000e–3(a) provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." To make out a prima facie case of retaliation under Title VII, a plaintiff must show: (1) protected opposition to discrimination or participation in a proceeding arising out of discrimination; (2) adverse action by the employer; and (3) a causal connection between the protected activity and the adverse action. *Sauers v. Salt Lake County,* 1 F.3d 1122, 1128 (10th Cir.1993).

The defendants first argue that they are entitled to summary judgment on the plaintiff's Title VII retaliation claim, in that the lapse of time between Ms. McCue's initial complaint in 1990, and her discharge in August 1993, negates any inference that defendants fired the plaintiff in retaliation. The defendants cite several cases in which courts have held that such lapses of time discount the causal connection between an employee's protected activity and an employer's adverse action. *See, e.g., Candelaria v. EG & G Measurements, Inc.,* 33 F.3d 1259, 1262 (10th Cir.1994).

The plaintiff claims, however, that the defendants began displaying retaliatory behavior immediately after her October 4, 1990, complaint. In her deposition, Ms. McCue

stated that Mr. Ybarra learned of her complaint on the same day she filed it, and that he screamed at her about it. According to the plaintiff, Mr. Ybarra later threatened to discharge her if she did not dismiss her February 1991 EEOC complaint. The plaintiff also submits that she received her first rating of "unsatisfactory" on an evaluation one month after filing her complaint. In addition to rating the plaintiff "unsatisfactory" in maintaining good community and agency relations, Mr. Ybarra made the following comment: "Her attitude towards supervision has become increasingly negative." The plaintiff appealed the evaluation. An appeal committee changed the plaintiff's rating from "unsatisfactory" to "satisfactory," noting "a lack of evidence to support the 'unsatisfactory' rating."

 Unlike the situation in *Candelaria,* in which the court found that the employer's first adverse action did not occur until some three years after the employee had filed charges against the company, *id.* at 1262, Ms. McCue alleges retaliatory acts which followed close on the heels of her discrimination complaint. Courts have specifically held that unjustified evaluations constitute retaliatory treatment under Title VII. *See, e.g., Cooper v. Cobe Labs., Inc.,* 743 F.Supp. 1422, 1433 (D.Colo.1990). We find that while the plaintiff's discharge did not occur until over two years after her EEOC charge, the plaintiff has alleged intervening incidents from which a reasonable jury could conclude that a causal connection existed between the plaintiff's protected activity and the defendants' adverse actions.

The defendants also contend that because Mr. Ybarra, the person whom Ms. McCue accuses of harassment, was removed from direct supervision of the plaintiff following her 1990 complaint, a reasonable jury could not infer that the plaintiff's later discharge was retaliatory. The defendants cite *Equal Employment Opportunity Comm'n v. Flasher Co.,* 986 F.2d 1312, 1316 (10th Cir.1992), for the proposition that a change in supervisors may negate any inference of discrimination or retaliation.

The court disagrees that *Flasher* supports the defendants' argument. Rather, *Flasher*

holds that where a plaintiff claims disparate treatment under Title VII, discrepancies in punishment may be explained by the fact that different supervisors were involved. *Id.* at 1322. In any event, the plaintiff maintains that she continued to receive work assignments from Mr. Ybarra until the date of her discharge, and that Mr. Ybarra continued to have contact with her about completed assignments. The defendants' removal of Mr. Ybarra as the plaintiff's direct supervisor did not eliminate the possibility of retaliatory treatment.

■ If a plaintiff makes a prima facie case of retaliation, "then the burden of production shifts to the defendant to produce a legitimate, nondiscriminatory reason for the adverse action. If evidence of a legitimate reason is produced, the plaintiff may still prevail if she demonstrates the articulated reason was a mere pretext for discrimination." *Sauers,* 1 F.3d at 1128 (quoting *Sorensen v. City of Aurora,* 984 F.2d 349, 351 (10th Cir.1993)). The defendants argue that even if Ms. McCue has established a prima facie case of retaliation, the plaintiff's deficient work performance constituted a legitimate, nondiscriminatory reason for her termination. The defendants refer the court to the parties' stipulation in the March 5, 1996, pretrial order that the plaintiff's work load was in arrearage at the time of her separation from KDHR. The defendants also assert that the plaintiff had used excessive leave time.

Mr. Medlock, Ms. McCue's supervisor at the time of her discharge, stated in his deposition that the plaintiff's attendance was "not a problem that [he] chose to address in her evaluations," but rather that "the major problem with Caryn's work was getting assigned cases completed." The plaintiff also points out that Joe Dick's August 19, 1993, letter of dismissal made no mention of the plaintiff's absenteeism. Furthermore, the defendants' Statement of Undisputed Material Facts outlines a number of instances in which management noted the plaintiff's excessive absenteeism between 1979 and 1989, but is bereft of references to the plaintiff's poor attendance after that time. We therefore find that Ms. McCue's attendance does not constitute a legitimate, nondiscriminatory reason for her termination.

■ The primary reason advanced by the defendants for the plaintiff's discharge, i.e., her poor work performance, does represent a facially legitimate, nondiscriminatory reason for their adverse action against the plaintiff. *See Sorensen,* 984 F.2d at 353–54. The defendants have produced copies of several "performance logs" and evaluations which they presented to the plaintiff between March 1993 and August 1993. The documents rate the plaintiff as "unsatisfactory" due to her failure to complete assigned work in a timely fashion. The burden thus shifts back to the plaintiff to demonstrate that the defendants' articulated reason was pretextual.

Ms. McCue first argues that the fact that she was not criticized for her work backlog prior to the receipt of her right-to-sue letter in January 1993 is evidence that the defendants' proffered reason for her discharge is pretextual. In response, the defendants refer the court to Mr. Ybarra's January 15, 1988, letter to Ms. McCue in which Mr. Ybarra asks the plaintiff to submit a plan to improve her backlog situation, and a January 17, 1992, memorandum in which Mr. Ybarra informed Mr. Medlock that Ms. McCue was the principle reason for KDHR's failure to meet federal time requirements for case investigations. Mr. Medlock, however, testified in his deposition that he had "no knowledge that [Ms. McCue], prior to filing the complaint, was ever in an arrearage situation." Furthermore, the plaintiff never received a "performance log" regarding any work arrearage prior to March 1993.

Ms. McCue also claims that the defendants' behavior contributed to the backlog for which she was blamed. The plaintiff states that Mr. Ybarra's continued threats and harassment through 1993 caused her great distress and trauma, which detracted from her ability to concentrate and perform her job responsibilities. While Mr. Medlock testified that the plaintiff never told him that stress associated with her harassment charge affected her ability to complete her work, he acknowledged that he was aware that Ms. McCue was uncomfortable being in the same

room with Mr. Ybarra. Mr. Medlock stated that he "took special pains to always try to keep [himself] physically between the two of them."

The plaintiff further submits that KDHR never provided her with a computer which would allow her to transmit or receive data between Overland Park and Topeka, thereby requiring her to personally deliver files to Topeka. Mr. Medlock confirmed in his deposition that Ms. McCue "could not key in the results of her work into the reporting system as all other investigators were able to do."

Most significantly, Ms. McCue alleges that Mr. Ybarra sabotaged her work by claiming that she had not completed tasks which in fact she had. The plaintiff states that because she suspected that she was being falsely accused, she began to keep copies of her investigation files. According to the plaintiff, when Mr. Ybarra would review her work and claim that she had not documented a particular interview, her personal file copy would reveal that she had. Mr. Ybarra admits that although no longer her supervisor, he continued to review Ms. McCue's work through the time of her discharge. The plaintiff submits that having to re-do work already completed greatly contributed to her backlog.

Ms. McCue states that upon her termination, she was escorted from her office and was not provided the opportunity to retrieve the file copies which would vindicate her. The plaintiff further states that it is her understanding that her files have since been destroyed or lost.

■ "When the contents of a document are relevant ..., the trier of fact generally may receive the fact of the document's non-production or destruction as evidence that the party which has prevented production did so out of the well-founded fear that the contents would harm him." *Nation–Wide Check Corp. v. Forest Hills Distribs., Inc.*, 692 F.2d 214, 217 (1st Cir.1982). In such circumstances, "it is proper for the trial court to create a rebuttable presumption that establishes the missing elements of the plaintiff's case that could only have been proved by the availability of the missing evidence." *Welsh v. United States*, 844 F.2d 1239, 1248 (6th Cir.1988). The defendants respond, however, that even if Ms. McCue's "tampering" argument were assumed true for purposes of this motion, that the evidence in support of the plaintiff's discharge is still so one-sided that the defendants must prevail as a matter of law.

■ We disagree with the defendants that the plaintiff's evidence is insufficient to withstand summary judgment. The court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues"). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2509–10. As the Tenth Circuit noted in *Romero v. Union Pac. R.R.*, 615 F.2d 1303, 1309 (10th Cir.1980), "the question of retaliation is particularly inappropriate for summary judgment disposition, since the primary issue is one of intent and motive." We find that Ms. McCue has presented sufficient evidence that the defendants' reason for discharging her was pretextual so as to preclude the entry of summary judgment on her Title VII retaliation claim.

The plaintiff's claim against the individual defendants, however, must be dismissed. *See Sauers*, 1 F.3d at 1125 (relief granted under Title VII is against the employer, not individual employees). While a claimant may sue individuals as agents of the employer, it is duplicative for Ms. McCue to sue both KDHR and employees of the department in their official capacities. *Miller v. Brungardt*, 916 F.Supp. 1096, 1098 (D.Kan.1996).

## C. *KAAD Claims*

■ On August 2, 1995, the court dismissed the plaintiff's KAAD claims against KDHR and the other defendants in their official capacities. The plaintiff is also prohibited from bringing her state law claims

against the defendants in their individual capacities. *Davidson v. MAC Equip., Inc.,* 878 F.Supp. 186, 188 (D.Kan.1995). The court therefore grants summary judgment as to the plaintiff's remaining KAAD claims.

### D. *§ 1983 Claims*

#### 1. *Sexual Harassment*

42 U.S.C. § 1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

In *Starrett v. Wadley,* 876 F.2d 808, 814 (10th Cir.1989), the Tenth Circuit held that sexual harassment can violate the Fourteenth Amendment right to equal protection of the laws so as to fall within the purview of § 1983. The defendants contend, however, that Ms. McCue's sexual harassment claim is barred by the statute of limitations.

■■■ In *Wilson v. Garcia,* 471 U.S. 261, 276, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985), the Supreme Court held that the state statute of limitations applicable to personal injury actions should govern § 1983 claims within that state. Kansas law specifies a two-year statute of limitations for actions "for injury to the rights of another, not arising on contract, and not herein enumerated." Kan.Stat.Ann. § 60–513(a)(4). Section 60–513(a)(4) is thus the applicable statute of limitations for § 1983 actions in Kansas. *Oyler v. Finney,* 870 F.Supp. 1018, 1023 (D.Kan. 1994), *aff'd,* 52 F.3d 338 (10th Cir.1995).

The pretrial order in this case states the plaintiff's contention in regard to sexual harassment as follows: "Beginning in approximately 1986, and continuing thereafter *up until and including October 3, 1990,* in uninterrupted fashion, Plaintiff's supervisor, Joseph Ybarra, engaged in sexual harassment, offensive to the Plaintiff and to a reasonable person, contrary to 42 U.S.C. § 2000e *et seq.*" (emphasis added). The

plaintiff's allegations in the pretrial order control the subsequent course of the action. *See* Fed.R.Civ.P. 16(e). Because the plaintiff did not file suit until March 9, 1995, the plaintiff's § 1983 claims arising out of the defendant's alleged sexual harassment are time-barred.

#### 2. *Retaliation*

■■■ While the applicability of Title VII to a plaintiff's claim does not preclude an additional remedy under § 1983, a right created *solely* under Title VII cannot serve as the basis for an independent remedy under § 1983. *Starrett,* 876 F.2d at 813–14 (emphasis added). In *Tafoya v. Adams,* 816 F.2d 555, 558 (10th Cir.1987), *cert. denied,* 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 108 (1987), the court held that the right to be free of retaliatory discharge provided for by Title VII does not entitle one to relief under § 1983. *See also Long v. Laramie County Community College Dist.,* 840 F.2d 743, 750 n. 1, 752 (10th Cir.1988), *cert. denied,* 488 U.S. 825, 109 S.Ct. 73, 102 L.Ed.2d 50 (1988) (theory of liability for retaliatory conduct which alleges violation of plaintiff's equal protection rights does not come within § 1983); *Houck v. City of Prairie Village, Kan.,* 912 F.Supp. 1438, 1443 (D.Kan.1996) (no liability under § 1983 for retaliatory conduct which itself is actionable under Title VII).

The authorities which the plaintiff cites in support of her § 1983 retaliation claim are distinguishable from the instant case. In *Noland v. McAdoo,* 39 F.3d 269, 272 (10th Cir.1994), the plaintiff recovered under § 1983 for harassment, not retaliatory discharge. In *Starrett,* the Tenth Circuit concluded that the plaintiff could recover for retaliatory termination under § 1983. 876 F.2d at 817. The plaintiff's claim, however, was based upon substantive rights granted by the First Amendment. *Id.* n. 12. The court specifically stated that its conclusion was not inconsistent with *Tafoya v. Adams. Id.* Where, as here, the plaintiff's § 1983 claim for retaliatory discharge does not have as an independent basis the denial of First Amendment rights, the court must follow

*Tafoya* and *Long v. Laramie County* and grant the defendant summary judgment.

### 3. *Defamation*

 In her final § 1983 claim, Ms. McCue alleges that the defendants defamed her, and thereby deprived her of a liberty interest in her reputation. To establish a liberty interest with regard to her employment, a plaintiff must:

(1) show that [s]he was *stigmatized* in connection with an alteration of her legal status as an employee, (2) allege that the stigma arose from substantially *false* characterizations of the employee or her conduct, and (3) demonstrate that the damaging characterizations were made *public* through channels other than the litigation initiated by the employee.

*Sipes v. United States,* 744 F.2d 1418, 1421 (10th Cir.1984) (quoting *Developments in the Law—Public Employment,* 97 Harv.L.Rev. 1161, 1789 (1984)).

 The plaintiff maintains that the defendants "sabotag[ed] [her] work product and later cast[ed] the blame" on her. According to Ms. McCue, the defendants have represented that she alone caused KDHR to be in non-compliance with certain federal guidelines. In support of her allegation, the plaintiff refers the court to that portion of Mr. Medlock's deposition in which Mr. Medlock testified that the United States Department of Labor had sent a letter to KDHR criticizing the department for not meeting federal time guidelines. The plaintiff's evidence, however, does not make a prima facie showing of the elements of defamation. For example, the plaintiff has not produced evidence from which a reasonable jury could conclude that any damaging characterization was made public through channels other than the litigation initiated by the employee. *See Sipes,* 744 F.2d at 1421. The plaintiff "may not rest upon ... mere allegations," but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). The court therefore grants the defendant summary judgment as to the plaintiff's defamation claim.

### E. *Compensatory and Punitive Damages*

Finally, the defendants argue that they are entitled to summary judgment on the plaintiff's claims for compensatory and punitive damages.

42 U.S.C. § 1981a(b)(1) provides that "[a] complaining party may recover punitive damages under this section against a respondent (*other than a government, government agency or political subdivision* ) . . . ." (emphasis added). The plaintiff thus cannot recover punitive damages against the defendant. *See Beth v. Espy,* 854 F.Supp. 735, 737 (D.Kan. 1994) (denying motion to amend Title VII complaint to include claim for punitive damages against federal government). The plaintiff is entitled, however, to seek compensatory damages from the defendant "for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981a(b)(3); *see also Davidson,* 878 F.Supp. at 189.

**IT IS THEREFORE BY THE COURT ORDERED** that the defendants' Motion for Summary Judgment (Doc. 63) is granted in part and denied in part. Summary judgment is denied as to the plaintiff's Title VII claim for retaliation, and as to her claim for compensatory damages. Summary judgment is granted as to all other claims.

**IT IS FURTHER ORDERED** that the defendants Joe Dick, Joseph Ybarra, Bill Medlock, and Bob Molander are dismissed from this action.