**Debra T. SAUERS, Plaintiff–Appellant,**

v.

**SALT LAKE COUNTY and Theodore L. Cannon, Defendants–Appellees,**

David Yocom, Donald Sawaya, Michael Stewart, Sam Dawson, John Does 1–8, Defendants.

No. 91–4223.

United States Court of Appeals, Tenth Circuit.

Aug. 9, 1993.

Kathryn Collard (Steve Russell, also of Collard & Russell, with her on the briefs), Salt Lake City, UT, for plaintiff-appellant.

Patricia J. Marlowe, Deputy County Atty. (David E. Yocom, Salt Lake County Atty., with her on the brief), Salt Lake City, UT, for defendants-appellees.

Before McKAY, Chief Judge, and LOGAN and BALDOCK, Circuit Judges.

LOGAN, Circuit Judge.

Plaintiff Debra T. Sauers appeals the judgment in favor of defendants Salt Lake County and Theodore L. Cannon on her claims that defendants are liable for sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964, and for sexual harassment in violation of the Equal Protection Clause, actionable under 42 U.S.C. § 1983. A jury, whose verdict was binding on the § 1983 claims and advisory with respect to the Title VII charges, found for defendants on all counts except one, finding that Cannon had sexually harassed plaintiff in violation of Title VII. The district court, however, found that plaintiff did not consider Cannon's conduct to be sexual harassment, and it therefore rejected the advisory verdict and entered judgment for defendants on all counts.[1]

On appeal plaintiff argues that the evidence required findings in her favor on her sexual harassment and retaliation charges, and that the district court erred in rejecting her quid pro quo sexual harassment theory, dismissing her § 1983 claim against the County, and admitting evidence of Cannon's mental illness and a disciplinary letter from plaintiff's personnel file. Defendants argue that plaintiff's Title VII claims were time-barred.

I

We first consider defendants' argument that the Title VII claim was filed out of time. Plaintiff was terminated as a secretary in the Salt Lake County Attorney's Office in early 1988, and sought relief from the Salt Lake County Career Service Council. The Council denied relief, and plaintiff received a Right to Sue letter from the EEOC dated April 7, 1988, informing her that she had ninety days within which to file a discrimination action in

---

1. Some of the district court's pretrial rulings on motions are reported in *Sauers v. Salt Lake Coun-* *ty,* 722 F.Supp. 676 (D.Utah 1989).

federal court. On July 5, the eighty-ninth day, plaintiff filed a pro se complaint naming, *inter alia,* the Salt Lake County Attorney's Office and Ted Cannon as defendants. Plaintiff subsequently retained counsel, and filed a verified amended complaint on September 29, 1988, naming Salt Lake County and Cannon as defendants, among others.

■ Relying on *Schiavone v. Fortune,* 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986), in which the Supreme Court adopted a strict reading of Fed.R.Civ.P. 15(c),[2] defendants argue that plaintiff's amended complaint did not relate back to her original complaint, and therefore that her Title VII action is time barred. Salt Lake County was first correctly named in the amended complaint after the ninety-day statute of limitations expired. Even if we were to agree that *Schiavone* requires a holding that naming the Salt Lake County Attorney's Office is not a suit against Salt Lake County, we still must find that the claim against the County was timely filed.

■ Cannon, the county attorney, was named as a defendant in the original complaint. Under Title VII, suits against individuals must proceed in their official capacity; individual capacity suits are inappropriate. "The relief granted under Title VII is against the *employer,* not individual employees whose actions would constitute a violation of the Act. We think the proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly." *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991) (citations omitted). Therefore, because the suit against Cannon could proceed only in his official capacity, it operated as a suit against Salt Lake County itself, *see Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985),

and the County was timely named as a defendant.

■ The County may be liable without necessarily knowing of Cannon's actions. "The term 'employer' means a person engaged in an industry affecting commerce ... and any agent of such a person." · 42 U.S.C. § 2000e(b). Unfortunately, "[n]owhere in Title VII is the term 'agent' defined." *Barger v. Kansas,* 630 F.Supp. 88, 89 (D.Kan.1985). We agree with the Fourth Circuit that "[a]n individual qualifies as an 'employer' under Title VII if he or she serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment." *Paroline v. Unisys Corp.,* 879 F.2d 100, 104 (4th ·Cir.1989), *aff'd in pertinent part,* 900 F.2d 27 (4th Cir.1990) (en banc). In such a situation, the individual operates as the alter ego of the employer, and the employer is liable for the unlawful employment practices of the individual without regard to whether the employer knew of the individual's conduct. *See* 29 C.F.R. § 1604.11(c).[3]

In this case, defendant Cannon is a paradigm example of a supervisor with significant control over plaintiff's hiring, ·firing, or conditions of employment. The parties agree that, as county attorney, Cannon had the ultimate authority over her employment and working conditions. Consequently, plaintiff's claim of a hostile work environment caused by Cannon's conduct is a claim against Salt Lake County itself, and no knowledge or recklessness on the part of the County must be demonstrated.

## II

■ We next turn to plaintiff's argument that the evidence of Cannon's sexual

---

2. Rule 15(c) has since been amended to overrule *Schiavone,* but that amendment did not take effect until December 1, 1991, and is therefore inapplicable to plaintiff's claim.

3. The employer is not always liable for sexual harassment by its supervisors, *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 72, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986), but may be liable under the agency principles discussed in *Hirschfeld v. New Mexico Corrections Department,* 916

F.2d 572 (10th Cir.1990). There we determined that employer liability for sexual harassment may attach if the harassers were acting within the scope of their employment, if the employer failed to remedy a hostile environment of which it knew or should have known, or if the harassers acted under apparent authority from the employer or were aided in accomplishing the harassment by their relationship to the employer. *Id.* at 576–79.

harassment of her was so overwhelming that no reasonable factfinder could fail to find liability. It is undisputed that "a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986). "Hostile work environment harassment occurs where [sexual] conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment." *Hirschfeld*, 916 F.2d at 575 (internal quotations omitted). "Whether the sexual conduct complained of is sufficiently pervasive to create a hostile or offensive work environment must be determined from the totality of the circumstances." *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1413 (10th Cir.1987). The plaintiff must demonstrate that the offending conduct was unwelcome; however, "the question whether particular conduct was indeed unwelcome presents difficult problems of proof and turns largely on credibility determinations committed to the trier of fact." *Vinson*, 477 U.S. at 68, 106 S.Ct. at 2406. We review the district court's finding of no sexual harassment under a clearly erroneous standard. *Cortes v. Maxus Exploration Co.*, 977 F.2d 195, 198 (5th Cir.1992).

In its findings of fact, the district court concluded that "[t]he work environment at the Investigative Division of the Salt Lake County Attorney Office was that of an unusually rough, sexually explicit and raw atmosphere," and that "[t]his atmosphere was known and accepted or tolerated by all concerned personnel, male and female alike, including plaintiff." I Appellant's App. at 546–47. Although the court found that this was a "hostile work environment," it determined that the environment "did not interfere with the performance of plaintiff's duties and it was not a hostile atmosphere and environment to plaintiff." *Id.* at 547. Further, the court concluded that "Cannon's conduct was not viewed by plaintiff as unwelcome sexual harassment, but rather it was viewed by plaintiff as disgusting and degrading conduct, likely the product of mental illness." *Id.* If evidence in the record supports these conclu-

sions, the court's judgment must be affirmed, even if contrary evidence is present. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Sorensen v. City of Aurora*, 984 F.2d 349, 351 (10th Cir.1993).

In 1984, plaintiff became a secretary in the Investigations Division of the Salt Lake County Attorney's Office. Defendant Cannon was the Salt Lake County Attorney, plaintiff's highest level supervisor. Plaintiff testified that, although the atmosphere in the division was often coarse, the situation worsened in the spring of 1986 when Cannon chose not to seek re-election as county attorney and began to exhibit bizarre behavior. He came to the office unshaven and unkempt, wearing clothing apparently purchased at a local consignment shop; he once walked around the office without his shoes, and on another occasion placed a flower basket atop his head. Plaintiff alleged that Cannon also began sexually harassing her and Shauna Clark, the other secretary in the division, beyond what they had come to accept as office banter. Cannon admits that during this period he did make comments about plaintiff's breasts and her attire, that on one occasion he asked plaintiff to "swap spit," and that he once commented on a sweater pattern plaintiff was wearing and outlined the pattern with his finger in the air in front of plaintiff's chest.

Plaintiff testified that in September 1986 Cannon attempted to grab her breasts, and that he approached her from behind as she was sitting at her desk and rubbed his groin against her shoulder. Cannon denies these allegations. On September 19, plaintiff was reassigned to a different office, over her objections. That same evening, Shauna Clark decided to file sexual harassment charges against Cannon. The following week, a special commission was formed to investigate the charges, and called plaintiff to testify. Plaintiff's testimony at that hearing was introduced into evidence in the instant case. Her testimony there was somewhat equivocal, in that she admitted that she was used to a certain rough working atmosphere among police officers and investigators, that she was

known as the "bruiser" of the office, and that the men stayed away from her as a result. Appellee's Supp.App., Tr. of Investigative Interview at 14. However, she also testified that Cannon's behavior had degenerated since his decision not to seek re-election, that he had rubbed his groin against her shoulder, and that she found Cannon's recent conduct unwelcome, characterizing it as "garbage." *Id.* at 22.

During the same testimony, plaintiff made a number of statements that appear to contradict her claim of a hostile work environment based on sexual harassment: "I've never had Ted, in all the years I've known him, ever come on to me or anything else." *Id.* at 14; "I go back a long way with Ted. He'd always been a character. That's what I'm used to working with. I work with cops. So as a woman, I take a little bit more maybe in the way of language and things like that because it's a different environment." *Id.* at 17; "But a lot of men are sure fed up with Ted and his antics. The disruption it's caused with jobs and that. So it's not like it's totally a sexual harassment thing. Ted is really turning the office upside down." *Id.* at 44.

In her trial testimony, plaintiff reiterated her contention that Cannon's actions had created an abusive work environment, and this testimony was largely corroborated by Clark. However, a number of defense witnesses testified that plaintiff engaged in sexual banter with investigators, that plaintiff and Cannon exchanged off-color stories, and that plaintiff never objected to the atmosphere in the office. Further, three defense witnesses testified that plaintiff told Clark on September 19, when Clark was contemplating sexual harassment charges, that "I'd really like to help you but Ted never said anything or did anything to me." II Appellant's App. at 3–98; *accord id.* at 3–24; *id.* at 4–143. This statement, coming as it did on the evening of plaintiff's reassignment, is persuasive evidence that, although the atmosphere in the office was difficult, plaintiff never viewed any of Cannon's words or actions as sexual harassment directed at her. In his testimony, Cannon admitted making off-color comments to plaintiff, but denied her charges of

physical contact. Taken as a whole, although plaintiff presented significant evidence objectively supporting a sexual harassment claim, the evidence in the record supports the district court's finding that plaintiff herself did not perceive Cannon's actions as sexual harassment, but merely as "disgusting and degrading conduct."

### III

■ Plaintiff argues that the district court erred in determining that plaintiff had not presented a claim for quid pro quo sexual harassment. "Quid pro quo sexual harassment involves the conditioning of tangible employment benefits upon the submission to sexual conduct." *Hirschfeld,* 916 F.2d at 575. "If the plaintiff can show that she suffered an economic injury from her supervisor's actions, the employer becomes strictly liable without any further showing of why the employer should be responsible for the supervisor's conduct." *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.,* 957 F.2d 59, 62 (2d Cir.1992). "And the finding of no *quid pro quo* sexual harassment—whether as to a subsidiary or ultimate fact—must be reviewed under the clearly erroneous standard." *Hicks,* 833 F.2d at 1414.

We agree with the district court that plaintiff failed to make a prima facie case of quid pro quo sexual harassment. Plaintiff offered no evidence that Cannon made a sexual advance that plaintiff rejected, other than the "swap spit" comment. Plaintiff argues that her "refusal to accede in defendant Cannon's sexual harassment of herself and co-worker, Shauna Clark, and defendant Cannon's fear that plaintiff might file a sexual harassment complaint against him, were motivating forces in defendant Cannon's decision to transfer plaintiff from the Investigation Division." Appellant's Br. at 32. The district court correctly ruled that, although this argument is properly considered in plaintiff's retaliation claim, it is insufficient to support a quid pro quo sexual harassment claim.

### IV

Plaintiff alleged that her reassignment on September 19 was motivated by her opposition to Cannon's conduct and by his fear that

she would bring a sexual harassment claim against him, and therefore constituted impermissible retaliation under Title VII. In its findings of fact, the district court found that plaintiff had not proven these allegations by a preponderance of the evidence, and that defendants had given legitimate nondiscriminatory reasons for the transfer. We review these findings also under a clearly erroneous standard.

■■■■] Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). To support a claim of retaliation,

> [a] plaintiff must first establish a prima facie case of retaliation. If a prima facie case is established, then the burden of production shifts to the defendant to produce a legitimate, nondiscriminatory reason for the adverse action. If evidence of a legitimate reason is produced, the plaintiff may still prevail if she demonstrates the articulated reason was a mere pretext for discrimination. The overall burden of persuasion remains on the plaintiff.

*Sorensen*, 984 F.2d at 353. To make a prima facie case, a plaintiff must prove: (1) protected opposition to discrimination or participation in a proceeding arising out of discrimination; (2) adverse action by the employer; and (3) a causal connection between the protected activity and the adverse action. *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir.1993).

■■■■ At trial, plaintiff presented evidence that Cannon first mentioned the possibility of reassignment to South Valley, a branch office, on September 18, two days after Cannon allegedly rubbed his groin against plaintiff's shoulder. Plaintiff was formally reassigned the next day. Plaintiff also introduced evidence of a tape-recorded conversation between Cannon and Shauna Clark, in which Cannon appears to be concerned about someone filing sexual harassment charges against

him. Plaintiff contended that, although Cannon styled the reassignment as a promotion and promised a raise and opportunity for advancement, no raise or promotion resulted.

Although plaintiff's evidence does not match the usual pattern present in retaliation cases, we hold that to the extent the district court's findings imply that plaintiff failed to make out a prima facie case of retaliation, those findings are clearly erroneous. Plaintiff had not yet taken any action against which Cannon could retaliate, but the tape-recorded conversation between Cannon and Clark indicates his fear that a sexual harassment complaint might soon be filed by plaintiff. Action taken against an individual in anticipation of that person engaging in protected opposition to discrimination is no less retaliatory than action taken after the fact; consequently, we hold that this form of preemptive retaliation falls within the scope of 42 U.S.C. § 2000e–3(a). Plaintiff demonstrated that she was reassigned against her wishes, satisfying the requirement that an adverse action be taken against her, and the fact that reassignment came just two days after the Cannon–Clark conversation raises an inference that the reassignment was causally connected to Cannon's fear of suit from plaintiff.

■■■■ The district court also found, however, that defendants presented nondiscriminatory reasons behind the transfer, thereby rebutting any case of retaliation raised by plaintiff. Defendants introduced evidence that Don Harmon, plaintiff's second-level supervisor, was dissatisfied with plaintiff's work and sought to have her reassigned four to six weeks before it occurred. Cannon testified that he reassigned plaintiff to save her job, because he was to leave office soon and would not be able to protect her position once he left. The defense also presented evidence of a backlog of work at the South Valley office and the need for assistance there. Plaintiff received the same salary at the new location and had many of the same responsibilities. The district court's finding that defendants rebutted any inference of discrimination associated with plaintiff's reassignment is thus supported by the evidence, and is not clearly erroneous. Therefore, the

court's finding of no impermissible retaliation in violation of Title VII is also not clearly erroneous.

## V

Finding no basis for municipal liability the district court dismissed before trial plaintiff's claim against Salt Lake County under 42 U.S.C. § 1983 for sexual harassment in violation of the Equal Protection Clause. Plaintiff argues that this ruling was erroneous.[4]

 Municipalities are "persons" under § 1983, and can therefore be sued for their constitutional torts. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). This extends to "other local government entities" such as counties. *Collins v. City of Harker Heights*, —— U.S. ——, ——, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261 (1992). Local government liability under § 1983 is not imposed on a respondeat superior theory. *Jantz v. Muci*, 976 F.2d 623, 630 (10th Cir. 1992). However, "a municipality is liable for the acts of its 'final policymaking authority' and may also be liable for the actions of an employee who is not a final policymaking authority if a widespread practice exists to the end that there is a 'custom or usage with the force of law.'" *Butcher v. City of McAlester*, 956 F.2d 973, 977 n. 2 (10th Cir.1992).

 In *Starrett v. Wadley*, 876 F.2d 808 (10th Cir.1989), we were confronted with a situation similar to the one here. There we held that employment decisions by an individual with final responsibility for personnel could generate liability for the County. *Id.* at 819. Cannon's reassignment of plaintiff, if improper, could therefore have resulted in § 1983 liability for Salt Lake County. However, plaintiff's reassignment was not proven to be the result of improper sexual discrimination, and Salt Lake County cannot be liable for it.

There is no indication in the record that Cannon's individual acts relating to plaintiff were officially sanctioned or ordered. Can-

non's alleged sexual harassment could not have imposed liability on Salt Lake County "unless they were so widespread and pervasive as to establish a 'custom' within his office." *Id.* Although at trial plaintiff complained about the general atmosphere in the Investigations Division, she specifically objected to the particular acts of defendant Cannon in the late summer and early fall of 1986. She stated that she was used to the office atmosphere among police officers, and that it was Cannon's increasingly bizarre conduct that offended her. Those specific acts do not rise to the level of a policy or custom within the Investigation Division, and Salt Lake County was properly dismissed as a defendant on the § 1983 claim.

## VI

 With respect to the 42 U.S.C. § 1983 claim against defendant Cannon that proceeded to trial, plaintiff argues that the court erred when it permitted the defendants to introduce evidence of Cannon's mental illness during 1986 as evidence of Cannon's lack of intent to intentionally discriminate. Plaintiff argues that Cannon's interposition of mental illness evidence constituted an affirmative defense that was not pleaded, and therefore should have been stricken under Fed. R.Civ.P. 8(c). Without deciding the nature of the defense offered by Cannon, we hold that because plaintiff had knowledge of the defense before trial, Cannon's failure to plead it was not reversible error. "[W]hen parties argue an affirmative defense in the district court, technical failure to plead the defense is not fatal." *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 334 (7th Cir. 1987).

 Plaintiff argues in the alternative that the mental illness evidence was not relevant to her § 1983 claim, and therefore should have been excluded. "A trial court's decision on whether to admit or exclude evidence may not be disturbed on appeal unless the appellate court determines that the district court abused its discretion." *Sorensen*,

---

4. Defendants argue that the § 1983 claims should be dismissed because the findings of the Utah Career Service Council are binding on the federal court, and therefore preclude relitigation

of the facts. The district court rejected this argument before trial, and we reject it for the same reasons. *See Sauers v. Salt Lake County*, 722 F.Supp. 676, 680–82 (D.Utah 1989).

984 F.2d at 354. We agree with Cannon's contention that evidence of his mental condition goes to the intent necessary to violate the Fourteenth Amendment. "A plaintiff in an equal protection action has the burden of demonstrating discriminatory intent. It is not necessary to demonstrate that the challenged action was taken solely for discriminatory purposes; it is necessary only to prove that a discriminatory purpose was a motivating factor." *Watson v. City of Kansas City, Kan.,* 857 F.2d 690, 694 (10th Cir.1988) (citation omitted). If Cannon was unable to form the requisite discriminatory intent because of mental illness, then he would not be liable under § 1983. Consequently, the evidence was relevant and properly admitted.

### VII

Finally, plaintiff contends that a disciplinary letter from her personnel file admitted against her was irrelevant and highly prejudicial. She also argues that because the letter was redacted to eliminate any reference to the reason for the discipline, the jury must have been confused and must have impermissibly speculated as to why plaintiff was reprimanded. As noted, admission of evidence is reviewed for abuse of discretion.

Defendants argued at trial that plaintiff was transferred for legitimate business reasons, and evidence of a prior disciplinary proceeding was corroborative of Harmon's testimony that he was unhappy with her work. There is no evidence that the redaction of the letter to omit references to the specific reasons for the action in any way confused the jury or prejudiced plaintiff's case. Plaintiff's argument is wholly speculative, and the district court did not abuse its discretion in admitting the letter.

AFFIRMED.