Fatena **DAHDAL**, Plaintiff,

v.

**THORN AMERICAS, INC., d/b/a Rent–A–Center, Defendant.**

**Civil Action No. 97–2119–GTV.**

United States District Court,
D. Kansas.

March 19, 1998.

---

John W. Gannan, II, Gannan & Thomas, Raytown, MO, Bert S. Braud, The Popham Law Firm, Kansas City, MO, for Plaintiff.

Larry M Schumaker, Shook, Hardy & Bacon L.L.P., Kansas City, MO, Wendell F. Cowan, Jr., Shook, Hardy & Bacon L.L.P., Overland Park, KS, J. Nick Badgerow, Jeannie M. DeVeney, Spencer, Fane, Britt & Browne, Overland Park, KS, for Defendant.

### MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

In this action, plaintiff claims that defendant subjected her to hostile work environment sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The case is before the court on defendant's motion for summary judgment (Doc. 89). For the reasons set forth below, defendant's motion is granted in part and denied in part as follows:

(1) summary judgment is granted as to plaintiff's sexual harassment claims based on a theory of negligent or reckless response to co-worker harassment;

(2) summary judgment is denied as to plaintiff's sexual harassment claims based on theories of misuse of supervisory authority; and

(3) summary judgment is denied as to plaintiff's retaliation claims.

### I. Factual Background

The following facts are either uncontroverted or based on evidence viewed in a light most favorable to the plaintiff. Immaterial facts and facts not properly supported in the record are omitted.

Defendant owns and operates Rent–A–Center stores across the United States. Rent–A–Center is in the business of renting furniture, electronics, appliances, and jewelry to the public. Each Rent–A–Center store has five levels of workers: delivery driver, customer service representative, account representative, assistant manager, and store manager. A store manager reports to a market manager and has supervisory responsibilities over all the employees in his or her store. Assistant managers have responsibility for the store when the store manager is absent, but do not have the authority to hire or fire other employees or adjust their compensation. Account representatives have no supervisory responsibilities.

Defendant maintains an Open Door Policy and grievance procedure policy that encourages employees to speak to management or human resources personnel about any problems they incur in the workplace. Defendant also has a policy against sexual harassment

in its policy manual and posts a sexual harassment poster in each of its stores. The poster explains the meaning of sexual harassment and provides guidance for reporting and remedying such behavior. Moreover, in September 1994, all Kansas City, Kansas store managers were trained on the subject of sexual harassment.

## A. Facts Concerning Hostile Work Environment Claim

On May 23, 1994, defendant hired plaintiff as a customer service representative at its Independence Avenue store in Kansas City, Missouri. After completing a training period, plaintiff was transferred to defendant's Minnesota Avenue store in Kansas City, Kansas. Shortly before and after her transfer, plaintiff was sexually harassed by an employee known as Cortez. When defendant found out about this harassment, an investigation ensued and Cortez was suspended for three days. According to the pretrial order, the alleged harassment by Cortez is no longer a part of plaintiff's claims.

On August 12, 1994, plaintiff was promoted to an account representative position. Sometime after this date, fellow account representative Marion Martinez allegedly began to sexually harass plaintiff. According to plaintiff's deposition testimony, the following events occurred between August 13, 1994 and October 17, 1994:

1. Martinez told plaintiff that he would like to "feel [her] tits."

2. A few days later, when plaintiff and Martinez were driving, Martinez asked if she "would like to stop at the hotel and fuck."

3. On one occasion, as plaintiff arose from bending down, her head was near Martinez' "private parts." Martinez rubbed himself and said "hum, hum, hum."

Plaintiff did not complain about this behavior to management until April 1995. At this time, plaintiff complained to Mike Larson, the new Minnesota Avenue store manager,

that Martinez was sexually harassing her and her co-worker, Heather Marsh. Plaintiff, however, did not relate any specific instances of sexual harassment to Larson. On the same day that he received the complaint; Larson spoke with Marsh and Martinez regarding plaintiff's allegations. Martinez denied harassing either woman, and Marsh denied that Martinez had ever harassed her. Marsh also stated that plaintiff had approached her and asked her to join with plaintiff in concocting sexual harassment allegations against Martinez in an effort to get him fired.

In the course of his investigation, Larson informed Jim Turner, his Market Manager and direct supervisor, about plaintiff's allegations. Turner subsequently met with both Marsh and Martinez. Again, both individuals stated that plaintiff's allegations were false. Based on their investigations, both Larson and Turner concluded that Martinez had not acted inappropriately and, therefore, did not take any specific action against him.

In her deposition, plaintiff testified that Martinez again harassed her during the week of April 29 to May 5, 1995. During this time period, Martinez allegedly told plaintiff "how he would like to fuck [her] and if he can cheat on his wife [she] would be the one!" The court is unable to determine if this alleged conduct occurred before or after plaintiff complained to Larson. After this incident, the plaintiff alleges no discrimination until August 1995. The following incidents occurred after that date:

1. Martinez, who had been promoted to Assistant Store Manager in June 1995, approached plaintiff when she was sitting on a bed in the store, sat next to her, put his head on her stomach, and told her that he "would like to fuck her right now." [1]

2. Martinez told plaintiff that he would pay her for vacation that she had not earned if she "fucked him." Although plaintiff did not have sex with Martinez, plaintiff claims that he paid her

1. Plaintiff asserts that this incident occurred in March 1995 rather than June 1995; however, she fails to provide the court with any factual support for this differing date. In her statement of uncontroverted facts, plaintiff claims she testi-

fied to this in her "draft Affidavit for her EEOC Charge." This document is not an affidavit and fails to satisfy the requirements of D.Kan. Rule 56.1 as plaintiff's "testimony" was not given under oath.

for the unearned "vacation" time anyway.

3. Martinez rubbed his chest on plaintiff's chest as he passed her and made remarks like "Your tits look good, I would like to sample it" and "When can we do it?" This behavior occurred on an everyday basis for about four months.

4. Plaintiff was sitting in the account representative's office when Martinez grabbed her chair, pulled it toward him, and tried to kiss her. Plaintiff immediately called Vicki Ferguson in Human Resources to report this harassment.

This final incident and the phone call to Vicki Ferguson occurred on November 27, 1995; no harassment occurred after this date. Ferguson began investigating plaintiff's allegation by contacting Brian Pinga, the market manager for the Minnesota Avenue store. At a meeting on November 28, 1995, plaintiff told Pinga about Martinez' conduct. When Pinga asked plaintiff why she had not reported the harassment sooner, she told him that she had no proof and that it would have been her word against Martinez' word. The day after this meeting—November 29, 1995—plaintiff filed an EEOC charge alleging sexual harassment and retaliation.

Approximately three weeks after learning of the harassment, Vicki Ferguson traveled to Kansas City and began to investigate plaintiff's claims. Ferguson met with every employee at plaintiff's store. The only coworker who witnessed any of the conduct of which plaintiff complained was Eugene Tolefree. Tolefree stated that he saw Martinez put his head on plaintiff's stomach. However, he indicated that he did not hear Martinez make any remarks to plaintiff and that plaintiff did not push Martinez away or otherwise convey that the conduct was unwelcome. Although Ferguson did not conclude that Martinez sexually harassed plaintiff, she suspended him with pay on December 13, 1995, pending further investigation.

After completing her investigation, Ferguson was not convinced that Martinez had sexually harassed plaintiff. However, because Mr. Tolefree corroborated part of plaintiff's story and contradicted Martinez'

denial, Ferguson determined that there was enough information to warrant Martinez' termination. Martinez resigned before he could be terminated.

## B. Facts Concerning Retaliation Claim

Plaintiff alleges that within one or two weeks after she complained about Martinez' conduct to Mike Larson, her supervisor, Larson added more customers to her route and "played around with her numbers." He also made her clean more, verify more accounts, take care of more customers, and answer the phone more frequently. Moreover, after plaintiff filed her EEOC charge, defendant allegedly assigned plaintiff to the difficult customers who refused to pay and forced her to time in and out for lunch, a requirement to which other employees were not subjected.

## II. Summary Judgment Standards

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). One of the principal purposes of summary judgment is to isolate and dispose of factually unsupportable claims or defenses, and Rule 56 should be interpreted in a way that accomplishes this purpose. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court's proper inquiry is whether there is a need for a trial; in other words, whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex,* 477 U.S. at 325. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials

of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *See id.* The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden that the party will face at trial on the particular claim. *See id.* 477 U.S. at 254.

## III. Discussion

### A. Allegations Properly Before the Court

A plaintiff must exhaust her administrative remedies before bringing suit under Title VII. *Aramburu v. The Boeing Co.*, 112 F.3d 1398, 1409 (10th Cir.1997). Specifically, a plaintiff is required to file an administrative charge with the EEOC before filing in court. The purpose of this administrative filing requirement is to give an employer notice of the charges and an opportunity to comply voluntarily with the statutes. *See Aguirre v. McCaw RCC Comm., Inc.*, 923 F.Supp. 1431, 1433 (D.Kan.1996).

Under Title VII, the administrative charges must be filed with the EEOC within 300 days after the alleged discrimination. *See Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993) (citing 42 U.S.C. § 2000e–5(e)). Any alleged discrimination occurring outside of this time frame is time-barred and will not be considered by the court unless the acts complained of constitute part of a continuing pattern or practice of discrimination. *See id.* at 1415. This means that if the court does not find that the alleged discrimination amounts to a continuing practice, any incident of discrimination occurring before February 2, 1995— 300 hundred days before the filing of plaintiff's administrative charge with the EEOC— will not be considered by this court.

From the record before the court, plaintiff appears to allege that three instances of sexual harassment occurred from August 13 through October 17, 1994, that there was one incident of harassment between April 29 and May 5, 1995, and that a period of continuous harassment began no earlier than August 1, 1995 and lasted until Martinez was fired on December 13, 1995.

In determining whether incidents of alleged discrimination constitute a continuing course of discrimination or whether they are discrete and unrelated acts, the Tenth Circuit in *Martin v. Nannie and the Newborns* considered the following nonexclusive considerations: "(i) subject matter—whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence—whether the nature of the violations should trigger an employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate." *Id.*

There is no question that all the alleged harassment was similar in kind, if not the same. However, the subject matter is the only consistent aspect connecting plaintiff's allegations.

The second consideration is frequency. According to the summary judgment papers, no discrimination involving Martinez occurred prior to August 13, 1994. Three incidents of harassment occurred from August 13 to October 17, 1994. And one incident of harassment occurred between October 17, 1994 and August 1, 1995. The court concludes that four incidents of sexual harassment over a period of eleven and one-half months is not so frequent as to amount to a continuing violation.

The final consideration is permanence. "The continuing violation doctrine is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated." *Id.* n. 6. The critical inquiry is whether plaintiff knew or should have known that she was being discriminated against at the time of the harassing conduct. If plaintiff had the requisite knowledge, she cannot avoid the strict statute of limitations. Plaintiff claims that in the first period of discrimination, Martinez asked to "feel [her] tits" and asked her if she "would like to stop at the hotel to fuck." The court concludes that this is obvious and objective sexual harassment. A reasonable person in plaintiff's position would have known that her rights were being violated; therefore, the statute of limitations began to

run on a Title VII action alleging injury from this alleged harassment. This conclusion is bolstered by the fact that defendant has a sexual harassment policy in place and posted EEOC posters explaining the meaning of sexual harassment and providing guidance for reporting and remedying such behavior. Accordingly, incidents of alleged discrimination occurring prior to February 2, 1995—300 days prior to the filing of plaintiff's EEOC charge—will be excluded by the court.

### B. Hostile Work Environment Claim

██ Title VII prohibits an employer from discriminating against an employee on the basis of sex with respect to "compensation, terms, conditions, or privileges" of employment. 42 U.S.C. § 2000e–2(a)(1). For analytical purposes, courts have created two categories of sexual harassment. The first, quid pro quo harassment, occurs when specific benefits of employment are conditioned on sexual demands by the victim's supervisor. *Harrison v. Eddy Potash, Inc.*, 112 F.3d 1437, 1443 (10th Cir.1997). The second, hostile work environment harassment, occurs when a supervisor's or co-worker's sexual conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment. *Id.* Plaintiff only alleges hostile work environment sex discrimination in this action.

██ To establish a prima facie case of hostile work environment sexual harassment, a plaintiff must show the following:

1. that plaintiff is a member of a protected group;
2. that the conduct in question was unwelcome;
3. that the harassment was based on plaintiff's gender;
4. that the harassment was sufficiently severe or pervasive as to create an abusive or hostile work environment; and
5. that there exists some basis for imputing liability to plaintiff's employer.

*Brandau v. State of Kansas*, 968 F.Supp. 1416, 1420 (D.Kan.1997). For purposes of this motion, defendant concedes that plaintiff has established the first four elements.

However, defendant claims that summary judgment should be granted due to plaintiff's inability to establish any basis for imputing liability to defendant. Plaintiff responds that defendant is liable under two alternative theories. Plaintiff first claims that defendant is liable for negligently or recklessly failing to respond to hostile work environment sexual harassment by its employees. Plaintiff also argues that defendant is liable because Martinez had supervisory authority, and he used such authority to facilitate the harassment.

In *Harrison v. Eddy Potash*, the Tenth Circuit determined the precise requirements for imposing liability on an employer for hostile work environment sexual harassment. *See* 112 F.3d at 1443–46. The *Harrison* court, following the Supreme Court's direction in *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), looked to the principles of basic agency law set out in Restatement (Second) of Agency § 219 and determined that an employer is liable for the torts of its employee under the following circumstances:

(1) A master is subject to liability for the torts of his servants committed while acting in the scope of their employment.

(2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:

(a) the master intended the conduct or the consequences, or

(b) the master was negligent or reckless, or

(c) the conduct violated a non-delegable duty of the master, or

(d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.

112 F.3d at 1443–44. Only those theories of liability articulated in § 219(2)(b) and (d) are applicable to the case at bar.

#### 1. Negligent or Reckless Response to Co–Worker Harassment

██ Under the theory set out in Restatement (Second) of Agency § 219(2)(b), Title VII liability attaches to an employer for

"negligence or recklessness in failing to respond to hostile work environment sexual harassment by employees." *Id.* Under this theory, "the plaintiff must establish that the employer had actual or constructive knowledge of the hostile work environment." *Id.*

Plaintiff contends that defendant had both actual and constructive knowledge of the sexual harassment. In April 1995, plaintiff complained to Mike Larson, her store manager, that she was being sexually harassed by Martinez. In August 1995, plaintiff complained about Martinez' harassment of Heather Marsh to the Regional Human Resource Manager, but made no assertion that she was being sexually harassed herself. Finally, in November 1995, plaintiff filed a charge with the EEOC claiming to be a victim of hostile work environment sexual harassment. Because the harassment continued after plaintiff first made her complaints in April 1995, she argues that defendant was put on notice of the conduct and negligently failed to respond in a reasonable manner.

■ Defendant contends that it took plaintiff's complaints seriously and responded to them in a reasonable fashion. In response to plaintiff's April 1995 complaint that Martinez was sexually harassing her and Marsh, Larson spoke with Marsh and Martinez regarding plaintiff's allegations. Martinez denied harassing either woman and Marsh denied that Martinez had ever harassed her. Marsh also stated that plaintiff had approached her and asked her to join with plaintiff in concocting sexual harassment allegations against Martinez in an effort to get him fired.

Larson also informed Jim Turner, his Market Manager and supervisor, about plaintiff's allegations. Turner met with Marsh and Martinez and both stated that plaintiff's allegations were false. Based on these investigations, defendant concluded that Martinez had not acted inappropriately and did not take any specific action against him. The court concludes that defendant acted reasonably in investigating and responding to plaintiff's April 1995 complaint.

■ After the April 1995 complaint and subsequent investigations, plaintiff alleges that she faced sexual discrimination in May

1995 and, again, in August 1995. In May 1995, Martinez allegedly told plaintiff "how he would like to fuck [her] and if he can cheat on his wife [she] would be the one!" Plaintiff also claims that, starting in August 1995, Martinez sexually harassed her on three occasions and, on a daily basis, rubbed against her chest and made sexual and suggestive comments. Defendant does not contest that such conduct amounts to sexual harassment, but maintains that it is not liable because it had no notice of the harassment.

The record indicates that plaintiff did not inform management about her alleged sexually harassment until November 27, 1995, at which time she called and spoke to Vicki Ferguson, a member of defendant's Human Resource department. Upon receiving this call, Ferguson notified Brian Pinga, Market Manager for plaintiff's store. The next day, Pinga met with plaintiff and discussed her complaints and allegations. According to plaintiff's deposition, she told Pinga that she did not report Martinez' behavior any sooner because she did not have any proof other than her own word.

Approximately three weeks after receiving plaintiff's phone call, Ferguson personally began to investigate plaintiff's allegations. While in Kansas City, Ferguson met with all of plaintiff's co-workers, including Martinez and Larson. The investigation turned up only one person, Eugene Tolefree, who had witnessed any of the conduct alleged by plaintiff. Tolefree stated that he had witnessed the incident where Martinez put his head on plaintiff's stomach. Although Ferguson could not definitively conclude that Martinez had sexually harassed plaintiff, she suspended him with pay pending further investigation. Ferguson eventually decided to terminate Martinez due to inconsistencies between Tolefree's statement and Martinez' blanket denial of plaintiff's allegations.

The court finds that defendant was not put on notice of plaintiff's sexual harassment until November 27, 1995. The court further finds that upon receiving plaintiff's complaint, defendant responded in a timely, reasonable, and efficient manner. Defendant suspended and ultimately terminated the alleged harasser and ensured that any harass-

ment in the workplace ceased immediately. Accordingly, plaintiff cannot support her sexual harassment claim by relying on any negligent or reckless response by her employer.

### 2. Authority or Agency Relationship Aiding Harasser

 Although plaintiff cannot recover for defendant's alleged failure to respond to co-worker harassment, she may still recover if she can establish that Martinez had supervisory authority over her and that he used this authority to facilitate the harassment. In *Harrison,* the Tenth Circuit also defined the precise requirements for imposing liability on an employer for the sexual harassment of one of its supervisors. 112 F.3d at 1443–46. Citing to the Restatement (Second) of Agency § 219(2)(d), clause 1, the *Harrison* court held that Title VII liability will attach if "the employer manifested in a supervisor the authority to act on its behalf, such manifestation resulted in harm to the plaintiff, and the plaintiff acted or relied on the apparent authority in some way." *Id.* at 1446. The court also held that under the second clause of § 219(2)(d), Title VII liability attaches where "the employer delegated the authority to the supervisor to control the plaintiff's work environment and the supervisor abused that delegated authority by using that authority to aid or facilitate his perpetration of the harassment." *Id.*

### a. Reliance on manifested supervisory authority

 For Title VII liability to attach under the agency theory set out in the first clause of § 219(2)(d), plaintiff must establish three elements. "The first element is established whenever an employer vests its supervisor with the authority to control significant aspects of the work environment." *Id.* at 1444. The second element is satisfied by showing that the supervisor subjected the plaintiff to sexual harassment. *Id.* The third element is that plaintiff acted or relied on the apparent authority of her supervisor. *Id.*

 Defendant concedes the first two elements and argues only that plaintiff is unable to show that she relied on Martinez's apparent authority.

The third element ... is the most difficult to prove and will often hinge upon whether the employer has a formal policy against sexual harassment. When an employer lacks a formal written grievance policy, a victim of sexual harassment will reasonably perceive her only available options to be silently acquiescing in the harassment or leaving her job. In contrast, if an employer has taken steps to remove any possible inference that a supervisor has authority to sexually harass his subordinates, the victim is likely aware the harassment is not authorized and reliance on apparent authority will be difficult to establish.

*Id.* Defendant claims that it cannot be held liable because at the time of the alleged harassment a formal policy against sexual harassment was in place, posters explaining this policy were posted in plaintiff's store, and plaintiff was aware of the policy. The court does not agree. For purposes of this motion, defendant concedes that Martinez subjected plaintiff to sexual harassment. Furthermore, from the facts presented, it appears that some of this harassment occurred while Larson was out of town and Martinez was "in charge" of plaintiff's work place. (*See* Larson Dep. at 31). Therefore, regardless of defendant's posted policy, there exists a genuine issue of fact as to whether Martinez' authority resulted in harm to plaintiff. Defendant's motion for summary judgment is denied as to this claim.

### b. Abuse of delegated authority

 In order for Title VII liability to attach under the agency theory articulated in the second clause of § 219(2)(d), the harasser must have supervisory authority and must invoke that authority to facilitate the sexual harassment. *Id.* 112 F.3d at 1445. This theory allows an employer to be held liable, even if a sexual harassment policy is in place and is made known to plaintiff, where the supervisor uses his actual or apparent authority to aid or facilitate his perpetration of the harassment. If the harasser holds actual power over the plaintiff in the work place, then the employer is liable if the harasser misuses that power to create a hostile work environment for the plaintiff.

 From the facts presented, the court cannot conclusively determine that Martinez

did not misuse his supervisory authority over plaintiff. As stated above, defendant does not dispute that Larson left Martinez "in charge" when he was out of town and, plaintiff has alleged that Martinez harassed her while he was in this position of authority. Despite defendant's arguments to the contrary, this creates a genuine issue of fact as to whether Martinez' harassment was facilitated by his authority. Defendant's motion for summary judgment is denied as to this claim.

### C. Retaliation Claim

Plaintiff claims that within one or two weeks after she filed her EEOC charge and complained to her supervisor, more customers were added to her route, her supervisor "played around with her numbers," and she was required to clean the office more often, verify more accounts, take care of customers more often, and answer the phone more frequently. Plaintiff also claims that after she filed her EEOC charge, she was assigned difficult customers who refused to pay and was forced to time in and out for lunch when others employees did not have to do so.

■ Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). To establish a prima facie case of retaliation under Title VII, plaintiff must show: (1) that she engaged in protected opposition to discrimination; (2) that she suffered adverse action from her employer; and (3) that there was a causal connection between her protected activity and her employer's adverse action. *Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir.1993).

■ The parties do not dispute that plaintiff satisfies the first two elements of her prima facie case. The parties disagree, however, that there was a causal connection

between plaintiff's complaints and her increased and more onerous job duties. The court concludes that there is a genuine issue of fact as to whether plaintiff's claimed adverse treatment was the result of her having voiced sexual harassment complaints. Viewing the facts in a light most favorable to the nonmoving party, genuine issues of material fact exist as to whether plaintiff's terms and conditions of employment were adversely affected shortly after she voiced complaints to management and, again, shortly after she filed her EEOC charge. Plaintiff has sufficiently raised issues of fact surrounding her prima facie case [2] for retaliation, and defendant's motion for summary judgment must be denied as to this claim.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion for summary judgment (Doc. 89) is granted in part and denied in part as follows:

(1) summary judgment is granted as to plaintiff's sexual harassment claims based on a theory of negligent or reckless response to co-worker harassment;

(2) summary judgment is denied as to plaintiff's sexual harassment claims based on theories of misuse of supervisory authority; and

(3) summary judgment is denied as to plaintiff's retaliation claims.

The clerk shall mail copies of this order to counsel of record.

**IT IS SO ORDERED.**

---

2. Once a plaintiff establishes her prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. In this case, defendant has made no attempt to articulate such a reason.