**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 9, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ROCHELLE SMITH,

        Plaintiff - Appellant,

        v.

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
United States, Cari M. Dominguez,
Chair,

        Defendant - Appellee.

No. 05-2049

(D. New Mexico)

(D.C. No. CIV-03-465 JP/ACT)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **BALDOCK**, and **HARTZ**, Circuit Judges.

---

        Rochelle Smith is a former investigator at the Albuquerque District Office

of the Equal Employment Opportunity Commission (EEOC). She sued the EEOC

on April 16, 2003, in the United States District Court for the District of New

Mexico, claiming violations of Title VII of the Civil Rights Act of 1964 and the

Rehabilitation Act of 1973. She alleged that she was the victim of race

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

discrimination, national-origin discrimination, disability discrimination, and retaliation. The district court entered summary judgment in favor of the EEOC on all claims. Ms. Smith appeals the judgment and the district court's denial of her motion for leave to depose Ida Castro, the former Chair of the EEOC. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## I.    BACKGROUND

Ms. Smith, who is Caucasian, was employed by the Albuquerque office of the EEOC as an investigator from October 1993 until March 2002. In June 1999 Christella Garcia Alley, an Hispanic woman who had also been an investigator in the Albuquerque office, was promoted, becoming Ms. Smith's supervisor. According to Ms. Smith, after the promotion Ms. Alley subjected Ms. Smith to a steady stream of race-based harassment. Ms. Alley allegedly told a fellow supervisor, Patricia Gonzalez-Morrow, that Ms. Smith "'thought she was better than Hispanic women in the office," and "'that's the way White women are.'" Aplt. App. at 255. Ms. Alley also allegedly told Ms. Gonzalez-Morrow on more than one occasion that she intended to put Ms. Smith "'in her place,'" *id.* at 258, and that Ms. Smith was her former supervisor's "'little girl [but s]he's not going to be mine,'" *id.* at 234. Ms. Smith further claims that Ms. Alley often addressed her as "'Mi Hita,'" a Spanish term used by elders to address their daughters or granddaughters. *Id*. at 300.

-2-

On September 28, 2000, Ms. Alley directed Ms. Smith, who does not speak Spanish, to conduct an intake interview of two Hispanic men, one of whom did not speak English. According to Ms. Smith, she did "the best she could to communicate with them," but afterwards she dropped some documents on a desk in the front office and remarked that the task had been "fucking bullshit." *Id.* at 214. On September 29, 2000, Ms. Alley issued Ms. Smith a Letter of Warning (LOW) for her conduct the day before although, according to Ms. Smith, cursing was common in the office. On October 17, 2000, Ms. Smith filed a union grievance based on the LOW. The grievance did not allege that she had been discriminated against. On May 18, 2001, Ms. Smith's grievance was denied.

In June 2001 Ms. Smith requested and was granted a leave of absence. Ms. Smith claims that this leave was prompted by the physical and emotional stress she was experiencing as a result of the harassment at work. Ms. Smith was on leave from June 21 through August 25, 2001.

On July 25, 2001, while Ms. Smith was on leave, the Albuquerque EEOC office announced to employees that it would be giving cash and time-off awards for fiscal year 2001, and informed employees that they could nominate themselves or any other employee for an award. Ms. Smith was not nominated for an award, although she had received awards in 1995, 1997, and 1999 without nominating herself. All 11 employees who were nominated received an award.

Ms. Smith's last day working in the Albuquerque EEOC office was October 26, 2001, when she requested to be placed on leave without pay. Her application for disability retirement was granted on March 23, 2002.

On November 15, 2001, Ms. Alley and the head of the Albuquerque office, Georgia Marchbanks, completed Ms. Smith's performance appraisal for fiscal year 2001. EEOC employees are evaluated as either "Outstanding," "Proficient," or "Unacceptable." Ms. Alley and Ms. Marchbanks determined that her performance merited an appraisal of "Proficient." In all her previous years with the EEOC, Ms. Smith had received an appraisal of "Outstanding."

Ms. Smith first contacted an in-house Equal Employment Opportunity (EEO) counselor on August 24, 2001, the day before she returned to work after a two-month leave. It was during this leave that she had been told of racist remarks by Ms. Alley against her. After Ms. Smith had worked her last day in the Albuquerque EEOC office, she filed three separate EEO Charges of Discrimination: on October 29, 2001; November 30, 2001; and January 9, 2002. The October charge challenged the issuance of the LOW, alleging that Ms. Smith received it as the result of race and national-origin discrimination. The charge also alleged that Ms. Alley falsely accused Ms. Smith of being anti-Hispanic, that Ms. Alley encouraged co-workers to be hostile toward Ms. Smith, and that Ms. Alley minimized the value of Ms. Smith's work.

In her second EEO charge, Ms. Smith alleged that she had suffered race and national-origin discrimination and retaliation. She based her allegations on the following actions: she had not received a cash or time-off award in 2001, Ms. Alley had discussed Ms. Smith's earlier EEO complaint with other employees, and Ms. Alley had required Ms. Smith to provide a doctor's note for a one-day absence from work.

Ms. Smith's third EEO charge alleged discrimination on the basis of race, national origin, and mental disability, as well as retaliation. The charge complained that she had received a "Proficient" rather than an "Outstanding" rating on her performance appraisal, and that Ms. Alley had discussed Ms. Smith's earlier EEO complaints with other employees.

On April 16, 2003, Ms. Smith filed this lawsuit against the EEOC, claiming race discrimination, national-origin discrimination, disability discrimination and retaliation. On January 23, 2004, the district court dismissed Ms. Smith's race-discrimination claim based on issuance of the LOW. It determined that she had failed to exhaust her administrative remedies with respect to that claim because she had not complied with the requirement of 29 C.F.R. § 1614.105(a)(1) that she contact an EEO counselor within 45 days of the alleged discriminatory action. On August 20, 2004, the district court granted summary judgment to the EEOC on the

rest of Ms. Smith's claims. The court also denied Ms. Smith's request to depose Ida Castro, the former chair of the EEOC.

## II. DISCUSSION

### A. Standard of Review

"We review the district court's grant of summary judgment de novo, applying the same legal standard that should have been used by the district court." *Rivera v. City & County of Denver*, 365 F.3d 912, 920 (10th Cir. 2004) (internal quotation marks and brackets omitted). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

### B. Hostile Work Environment

Title VII of the Civil Rights Act of 1964 prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). This prohibition reaches racially hostile or abusive work environments. *See Bolden v. PRC Inc.*, 43 F.3d 545, 550 (10th Cir. 1994). "To constitute actionable harassment, the conduct must be sufficiently severe or pervasive enough to alter the conditions of the victim's employment and

create an abusive working environment." *Id.* at 550-51 (internal quotation marks and brackets omitted). In addition, the plaintiff must show that "the harassment was racial or stemmed from racial animus," *id.* at 551, and that she "subjectively perceive[d] the environment to be abusive," *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

The district court ruled that the one overt instance of racial enmity that Ms. Smith alleged—namely, Ms. Alley's false accusation that she was anti-Hispanic—was insufficient, standing alone, to support a hostile-work-environment claim. The court also ruled that the other hostile actions alleged by Ms. Smith, which were not overtly race-based, did not support a claim for a racially hostile work environment. The court further found that "none of these alleged hostile actions was sufficiently severe or pervasive to alter the conditions of [Ms. Smith's] employment and create an abusive working environment." Aplt. App. at 427.

On appeal Ms. Smith argues that her allegations of severity and pervasiveness of the harassment were sufficient to survive summary judgment. Four of Ms. Smith's allegations have a racial component: (1) Ms. Alley falsely accused her of assigning walk-in EEOC clients to particular EEOC investigators based on the race of the clients, (2) Ms. Alley called her a racist, (3) Ms. Alley claimed Ms. Smith was anti-Hispanic, and (4) Ms. Alley addressed her with

demeaning names, including "Mi Hita," a term used by Spanish-speakers to address their daughters or granddaughters. In addition, Ms. Smith claims that Ms. Alley harassed her in numerous other ways. Among these allegations were that Ms. Alley falsely accused her of intending to commit perjury, refused to let her teach and mentor others in the office, refused to appoint her acting supervisor of the office on certain occasions, accused her of not being a team player, told her colleagues that Ms. Smith thought she was better than them, pressured colleagues to make complaints about Ms. Smith, "strutt[ed] by, sneer[ed] at or ignor[ed] Ms. Smith," Aplt. Br. at 22 n.2, denied her smoking breaks, denied her an annual award, and disciplined Ms. Smith with the LOW for using swear words in the office when others were not so disciplined. Ms. Smith argues that the district court erred in finding that the ostensibly nonracial harassment would not support a claim of hostile work environment because those actions were part of a course of conduct that was "'tied to evidence of discriminatory animus.'" Aplt. Br. at 24 (quoting *Bolden*, 43 F.3d at 551). She contends that the alleged misconduct, considered in its totality, created a pervasively hostile work environment.

We disagree. To begin with, we note that we can limit this claim to her work environment during the two months from August 25 to October 26, 2001, because during her earlier time at work she had not *perceived* any racial discrimination. As noted above, an employee cannot claim that a work

-8-

environment constitutes a hostile work environment under Title VII unless the employee "subjectively perceive[s] the environment to be abusive." *Harris*, 510 U.S. at 21. We addressed the meaning of the subjective-perception requirement in *Sauers v. Salt Lake County*, 1 F.3d 1122 (10th Cir. 1993). In *Sauers* a female employee alleged a sexually hostile work environment. *Id*. at 1124. We affirmed the district court's judgment for the defendant, stating, "although plaintiff presented significant evidence objectively supporting a sexual harassment claim, the evidence in the record supports the district court's finding that plaintiff herself did not perceive [her supervisor's] actions as sexual harassment, but merely as 'disgusting and degrading conduct.'" *Id*. at 1127. As *Sauers* shows, Ms. Smith needed to believe not simply that she was being harassed, but also that the harassment was racially motivated. Yet, as Ms. Smith's counsel conceded at oral argument, Ms. Smith did not perceive her treatment by Ms. Alley as racially motivated until August 20, 2001, when she was told of the alleged racist comments Ms. Alley had made about her. Accordingly, Ms. Smith's hostile-work-environment claim could have arisen only during her last two months at work.

Turning to that two-month period, we find inadequate evidence to satisfy another element of a hostile-work-environment claim—namely, that the "conduct must be sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment." *Bolden*, 43 F.3d at 550-51 (internal quotation marks and brackets omitted). The only act alleged by Ms. Smith that can be dated during her work between August 25 and October 26, 2001, is the failure to give her an employee award. The other misconduct she alleges either occurred before that period, occurred after she quit going to work (her "Proficient" work evaluation in November 2001), or is undated. Thus, she has failed to establish the basis for a claim that while working between August and October 2001 she suffered sufficiently serious harassment to support a Title VII claim. *See id.*

### C.    Dismissal of LOW Claim

Ms. Smith also appeals the district court's grant of summary judgment on her race-discrimination claim related to the letter of warning (LOW) issued by Ms. Alley on September 29, 2000. The district court ruled that the claim was barred because Ms. Smith did not consult an EEO counselor within 45 days of the alleged adverse employment action. Ms. Smith does not dispute that such consultation is required by 29 C.F.R. § 1614.105 (relating to employees of certain federal agencies), which states:

> (a) Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.

(1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

*See Davis v. U. S. Postal Serv.*, 142 F.3d 1334, 1339 (10th Cir. 1998).

Ms. Smith argues, however, that the 45-day time limit was satisfied because she initiated a union grievance within 45 days of issuance of the LOW, and thereby fulfilled the policies underlying exhaustion—"protecting administrative agency authority and promoting judicial efficiency." Aplt. Br. at 25; *see Monreal v. Potter*, 367 F.3d 1224, 1233 (10th Cir. 2004). But Ms. Smith did not allege racial discrimination in her union grievance, so the agency was not alerted to her discrimination claim. The union grievance did not serve the purpose of a consultation with an EEO counselor. *Cf. id.* (class complaint of discrimination put agency on notice of individual claims).

Ms. Smith also suggests that the time limit should be tolled because she made an EEO report regarding the LOW "as soon as it became cognizable as a 'practice' motivated by her race." Aplt. Br. at 26. The district court rejected this argument, explaining that "the fact that a plaintiff may not have discovered the alleged discriminatory motive for an adverse employment action until later does not extend the 45-day period in which to contact an EEOC counselor" because the "45-day period begins to run when the plaintiff learns of the adverse employment

action and so is on notice to inquire whether the motive was discriminatory."

Aplt. App. at 91-92 (internal quotation marks omitted).

We note that 29 C.F.R. § 1614.105(a)(2) provides for tolling in certain circumstances:

> The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known [sic] that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

But the extension is to be granted by the EEOC. Ms. Smith presents no reason why she did not seek such an extension. Ms. Smith was advised by the EEO counselor's report that she had made her initial EEO contact more than 45 days after the issuance of the LOW and that a formal complaint was therefore likely to be dismissed. Nothing in the record indicates that she offered any reason for her late contact with the EEO counselor; in fact, the line on the counseling report for "Reason for Delayed Contact Beyond 45 Days, if Applicable" is left blank, Aplt. App. at 306. Therefore, we must agree with the district court that this claim is barred.

**D. Retaliation**

Ms. Smith also challenges the district court's ruling that she had not presented a prima facie case of retaliation. The district court based its ruling on Ms. Smith's failure to demonstrate that she had been subjected to an adverse employment action and her failure to cite any evidence in the record to support the allegations of retaliation.

Rather than addressing the district court's reasoning, her argument in support of the retaliation claim in her brief-in-chief is as follows:

> After Smith engaged in protected activity by confronting her supervisor and initiating an EEO charge, her work circumstances changed such that they could no [sic] be survived through temporary leaves of absence. The record is replete with evidence of retaliation. The District Court erred in granting summary judgment on the retaliation claim.

Aplt. Br. at 26-27. A footnote to the paragraph summarily lists instances of alleged retaliation. We will not search the record for evidence that the listed instances were motivated by retaliation. This argument is insufficient to present the matter on appeal. *See American Airlines v. Christensen*, 967 F.2d 410, 415 n.8 (10th Cir. 1992). *See also Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) ("[P]erfunctory complaints fail to frame and develop an issue sufficient to invoke appellate review.").

**E. Disability Discrimination**

Ms. Smith appeals the dismissal of her claim that the EEOC failed to accommodate her disability. The district court granted summary judgment to the

EEOC because Ms. Smith did not present evidence showing disability under the Rehabilitation Act of 1973 and because she failed to respond to the EEOC's argument to this effect in its summary-judgment motion. Citing D.N.M. Local Rule Civ. 7.1(b), the district court ruled that Ms. Smith's failure to respond to the EEOC's argument constituted consent to grant the motion with respect to that claim. The court also ruled that Ms. Smith had not suffered an adverse employment action.

Ms. Smith's opening brief makes no attempt to explain her failings below or to argue why the violations of the local rules should not bar her claim. Therefore, we must affirm the district court on this issue.

### F.    Direct Evidence of Discrimination

Both Ms. Smith and the EEOC have devoted portions of their briefs to the question whether Ms. Smith presented direct or indirect evidence of racial discrimination to the district court. Because this issue is irrelevant to the outcome of this appeal, we need not decide it. *See Griffin v. Davies*, 929 F.2d 550, 554 (10th Cir. 1991).

### G.    Deposition of Ida Castro

Finally, Ms. Smith challenges the district court's denial of her motion for leave to depose Ms. Castro, the former chair of the EEOC. The magistrate judge denied Ms. Smith's motion because the EEOC had shown that "Ms. Castro has no

personal knowledge or recollection of Plaintiff or this lawsuit or the administrative case and grievance," Aplt. Ap. at 108, and Ms. Smith had not shown that the deposition would produce any information leading to admissible evidence, *see* Fed. R. Civ. P. 26. On appeal the extent of Ms. Smith's argument is: "This witness has discoverable information about the supervision of this office and management decisions, including first-hand knowledge of the denial of Ms. Smith's grievance." Aplt. Br. at 28. We are not persuaded.

## III. CONCLUSION

We AFFIRM the ruling of the district court.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge

-15-